UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH WAYNE MOSS,

    Plaintiff                                            Civil Action No. 10-12733

v.                                                    HON. ARTHUR J. TARNOW
                                                      U.S. District Judge
                                                      HON. R. STEVEN WHALEN
COMMISSIONER OF SOCIAL              U.S. Magistrate Judge
SECURITY,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

Plaintiff Kenneth Moss brings this action pursuant to 42 U.S.C. §405(g), challenging a final decision of Defendant Commissioner denying his application for Disability Insurance Benefits under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

## PROCEDURAL HISTORY

On June 9, 2006, Plaintiff filed an application for Disability Insurance Benefits ("DIB") alleging disability as of October 19, 2005 (Tr. 74). After the initial denial of the claim, Plaintiff requested an administrative hearing, held on July 25, 2008 before Administrative Law Judge ("ALJ") James Gildea (Tr. 17). Plaintiff, represented by attorney Mikel Lupisella, testified, as did Vocational Expert ("VE") Thomas Dunleavy (Tr.21-30, 31-33). On September 3, 2008, ALJ Gildea found that Plaintiff was not disabled (Tr. 16). On

May 7, 2010, the Appeals Council denied review (Tr. 2-4). Plaintiff filed for judicial review of the final decision on July 9, 2010.

## BACKGROUND FACTS

Plaintiff, born February 7, 1953, was 55 when the ALJ issued his decision (Tr. 16, 74). He completed high school and worked previously as a driver for General Motors (Tr. 95, 100). He alleges disability as a result of bone spurs and a torn rotator cuff (Tr. 95).

.   **Plaintiff's Testimony**

Plaintiff testified that he was 5'11" and weighed 270 (Tr. 22). He reported that he received a weekly income of $689 from Workers' Compensation and a monthly pension of $3,000 (Tr. 22). Plaintiff described his most recent job as "a driver off the final assembly line," adding that he previously worked as a scheduler and "utility person" (Tr. 22).

Plaintiff reported that he stopped working in October, 2005 because of shoulder pain, noting that he had rotator cuff surgery in 2006 (Tr. 24). He stated that he underwent physical therapy for approximately 20 weeks following the surgery (Tr. 25). Alleging continuing shoulder pain, he reported that he took Vicodin three times a day (Tr. 25). Plaintiff testified that in addition to shoulder problems, he had been treated (successfully) for prostate cancer (Tr. 26). He alleged "constant" shoulder pain, adding that the condition was now exacerbated by bone spurs (Tr. 27). In addition to Vicodin, Plaintiff testified that he used heating pads twice a day to relieve his discomfort (Tr. 27).

B.   **Medical Evidence**

**1. Treating Sources**

In March, 2005, Plaintiff, diagnosed with a rotator cuff tear, was precluded from all overhead work and prescribed physical therapy (Tr. 148). In September, 2005, Syed A. Sattar, M.D. advised Plaintiff to "find a different job where he doesn't have to use his left

-2-

shoulder" (Tr. 177). Treating notes from October, 2005 show that although Plaintiff complained of shoulder pain, he exhibited a good range of motion (Tr. 160). The same report referenced imaging studies showing "minimal" arthritis (Tr. 160). The same month, an MRI showed a rotator cuff tear on the left (Tr. 168). Dr. Sattar observed that Plaintiff experienced trouble reaching (Tr. 170).

Plaintiff underwent rotator cuff surgery, performed by Joseph H. Guettler, M.D., in February, 2006 (Tr. 182, 226, 236, 242-244, 296-298). The following month, Dr. Sattar found the shoulder condition "much better" (Tr. 182, 205). In June, 2006, Plaintiff, having recently received a steroid injection, reported continued left shoulder pain with a restricted range of motion (Tr. 203, 224, 283). Dr. Guettler urged Plaintiff to perform home stretching exercises (Tr. 282-283, 312-313). July, 2006 treating state that Plaintiff was "feeling better" (Tr. 199, 221). In August, 2006, Plaintiff reported continued shoulder pain but no joint problems (Tr. 217). The same month, Dr. Guettler, noting that Plaintiff demonstrated an "excellent" range of motion and strength, found "a bit of discrepancy with how [Plaintiff] thinks he feels and how he is actually progressing" (Tr. 257, 311). In October, 2006, Dr. Guettler observed "no erythema or warmth" from the incision area and "full active elevation with ease" (Tr. 139). He advised Plaintiff to take anti-inflammatory medication for pain flare-ups (Tr. 139).

In January, 2007, Dr. Guettler observed that Plaintiff was "doing fine," noting that although he expressed the intent to apply for disability retirement, he "not feel that his symptoms warranted" a second surgery (Tr. 137). In April, 2007, Dr. Sattar advised Plaintiff to cut down on Vicodin use (Tr. 346). An August, 2007 echocardiogram found "mild to moderate" left ventricular hypertrophy (Tr. 368). On April 30, 2008, Plaintiff reported to Dr. Sattar that he experienced "a lot" of shoulder pain (Tr. 343). He received a steroid injection

on May 14, 2008 (Tr. 341). On June 25, 2008, Dr. Sattar completed a medical source statement finding that due to shoulder pain, Plaintiff was unable to perform *any* lifting or standing/walking for even two hours per workday (Tr. 374). Dr. Sattar found that Plaintiff experienced "severe" upper extremity and "mild" lower extremity limitations (Tr. 374).

### 2. A Non-Treating Source

In July, 2006, a non-examining Residual Functional Capacity Assessment performed on behalf of the SSA found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; sit, stand, or walk for up to six hours in an eight-hour workday; and push and pull without limitation (Tr. 333). Postural limitations consisted of frequent (as opposed to *constant*) balancing, stooping, kneeling, crouching, crawling, and climbing of ramps and stairs, but a preclusion on all ladder/rope/scaffold climbing (Tr. 334). The Assessment stated that that Plaintiff's ability to reach in all directions was impaired due to left shoulder problems but found no other manipulative limitations (Tr. 335). The Assessment found the absence of visual, communicative, or environmental limitations (Tr. 335-336).

### C. Vocational Expert Testimony

VE Thomas Dunleavy classified Plaintiff's former work as a "car tester" as semiskilled at the light exertional level and work as a parts handler (scheduler) as unskilled and medium[1] (Tr. 31). He found that neither position had transferrable skills (Tr. 31). The ALJ then posed the following question to the VE, taking into account Plaintiff's age, education, and work history:

---

[1]20 C.F.R. § 404.1567(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

> [H]as the residual functional capacity to perform at the light exertional level, which does not require climbing ladders, ropes or scaffolds, perform frequent climbing of ramps and stairs, perform frequent balance and stooping, kneeling, crouching and crawling and does not require overhead reaching with the left non-dominant upper extremity. Could such an individual perform past relevant work either as generally performed or as the claimant performed it?

(Tr. 32). Based on the above limitations, the VE found that the hypothetical individual would be able to perform Plaintiff's former work as a car tester (Tr. 233). In response to an alternate hypothetical question by Plaintiff's attorney, the VE found that if the individual were unable to lift, push, pull, or reach overhead with the upper left extremity and required a sit/stand option, he would be precluded from Plaintiff's past work (Tr. 33).

### D. The ALJ's Decision

Citing Plaintiff's medical records, the ALJ found that Plaintiff experienced the severe impairments of bone spurs and a left rotator cuff tear but that neither condition met or medically equaled the impairments found in Part 404 Appendix 1 Subpart P, Appendix No. 1 (Tr. 12). The ALJ found that Plaintiff retained the Residual Functional Capacity ("RFC") for light work with the following restrictions:

> [Plaintiff] cannot perform work that requires climbing ladders, ropes, or scaffolds, or more than frequent climbing of ramps and stairs, no more than frequent balancing, stooping, kneeling, and crawling or overhead reaching with the left, non-dominant upper extremity.

(Tr. 13). Consistent with the VE's testimony, the ALJ concluded that Plaintiff could perform his past relevant work as a car tester (Tr. 15).

The ALJ discounted Plaintiff's allegations of disability, noting that treating records created in the months following shoulder surgery showed "excellent" strength and range of motion (Tr. 14). The ALJ noted that while Plaintiff alleged ongoing shoulder pain, his treating sources did not place functional restrictions on his activity from August, 2006 to May, 2008 (Tr. 15). The ALJ rejected Dr. Sattar's June, 2008 "disability" assessment

finding it "quite conclusory" with "very little explanation of the evidence relied on in forming that opinion" (Tr. 15 *citing* 374).

## STANDARD OF REVIEW

The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. 42 U.S.C. §405(g); *Sherrill v. Secretary of Health and Human Services,* 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence is more than a scintilla but less that a preponderance. It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (*quoting Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, S. Ct. 206, 83 L.Ed.126 (1938)). The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(en banc). In determining whether the evidence is substantial, the court must "take into account whatever in the record fairly detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy.  20 C.F.R. §416.920(a).  The Plaintiff has the burden of proof as steps one through four, but the burden shifts to the Commissioner at step five  to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Richardson v. Secretary of Health & Human Services,* 735 F.2d 962, 964 (6th Cir.1984).

## ANALYSIS

### The Hypothetical Question

Plaintiff argues that the hypothetical question posed by the ALJ did not reflect his full degree of impairment. *Plaintiff's Brief* at 6-11, *Docket #9.* He contends that the limitations contained in Dr. Sattar's June, 2008 medical source statement ought to have been included among the hypothetical limitations. *Id.* at 7-10 (*citing* Tr. 374).  Plaintiff argues that the failure to account for all of his  limitations invalidates the VE's Step Four finding. *Id.*  On a related note, he points out that due to his age, the finding that he could perform only sedentary work would dictate a disability determination.[2]  *Id.* at 7.

---

2

Whether Plaintiff, 55 at the time of the hearing, could perform light, rather than just sedentary work is critical.  A finding that he was unable to perform any past relevant work, coupled with a finding that he could perform only sedentary work would direct a finding of disabled. "The 'grid,' Pt. 404, Subpt. P, App. 2, directs a finding of disabled if Plaintiff [closely approaching advanced age] has a residual functional capacity [ ] for only sedentary work, § 201.09, but not if his RFC is light. § 202.10." *Davis v. Secretary of Health and Human Services* 634 F.Supp. 174, 177 (E.D.Mich., 1986); *see also Scales v. Commissioner of Social Sec.,* 1996 WL 343533, *2 (6th Cir.1996).  Nonetheless here, § 201.09 is

*Varley v. Commissioner of Health and Human Services,* 820 F.2d 777, 779 (6th Cir.1987) holds that a hypothetical question constitutes substantial evidence only if it accurately portrays the individual's impairments. *See also Webb v. Commissioner of Social Sec*. 368 F.3d 629, 632 (6th Cir. 2004). However, "the ALJ is not obliged to incorporate unsubstantiated complaints into his hypotheticals." *Stanley v. Secretary of Health and Human Services,* 39 F.3d 115,118-119 (6th Cir.1994)(*citing Hardaway v. Secretary of Health & Human Servs.,* 823 F.2d 922, 927-28 (6th Cir.1987).

Substantial evidence easily supports the ALJ's choice of hypothetical limitations. Consistent with the July, 2006 Residual Functional Capacity Assessment, he found Plaintiff capable of light work with postural and manipulative activities reflecting left shoulder limitations (*compare* Tr. 32, 334-335). The ALJ's reliance on the non-examining Assessment, amply supported by the treating records, was well placed. Dr. Guettler observed six month after the February, 2006 surgery that Plaintiff demonstrated an "excellent" range of motion and strength in the affected shoulder (Tr. 257, 311). Notably, Plaintiff's August, 2006 self-assessment does not allege limitations in walking, standing, or sitting (Tr. 112).

In an overlapping argument, Plaintiff faults the ALJ for adopting the non-examining Assessment over the Dr. Sattar's June, 2008 medical source statement. *See Hensley v. Astrue,* 573 F. 3d 263, 266 (6th Cir. 2009)(internal quotation marks omitted)(*citing Wilson v. Commissioner of Social Sec.* 378 F.3d 541, 544 (6th Cir. 2004); 20 C.F.R. § 404.1527(d)(2))("[i]f the opinion of the claimant's treating physician is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record, it must be given controlling weight").

---

inapplicable, given that the ALJ's determination that Plaintiff could perform his past relevant work at the light exertional level is substantively and procedurally sound.

However, the ALJ permissibly rejected Dr. Sattar's June, 2008 findings on the basis that they were inconsistent with the rest of record. *Warner v. Commissioner of Social Sec.,* 375 F.3d 387, 391 -392 (6th Cir. 2004)(In the presence of contradicting substantial evidence, the ALJ may reject all or a portion of the treating source's findings).

 First, Plaintiff's own statement that he performed self-care activities, prepared light meals, drove regularly, shopped for groceries, and walked without limitation stands at odds with the Dr. Sattar's conclusion that he was unable to perform *any* lifting and only limited walking (Tr. 109-110). Further, Dr. Sattar's conclusion that Plaintiff was not capable of any lifting following the February, 2006 surgery stands unsupported by imaging studies or objective tests. Dr. Sattar's findings are also undermined by the fact that following surgery, Plaintiff received exclusively conservative treatment consisting of Vocodin and sporadic steroid injections. Treating notes indicate that a question existed as to whether Plaintiff's Vocodin use was appropriate. In October, 2006, he was advised to use anti-inflammatory medication for pain flare-ups (Tr. 139) and in April, 2007 Dr. Sattar advised Plaintiff to reduce his Vicodin use (Tr. 346). The record also shows that Plaintiff was non-compliant with post-surgery recommendations to perform home exercise and declined to consider a second surgery, despite allegations of ongoing disability (Tr. 137, 282, 284).

 The ALJ also complied with the procedural requirements of the treating physician analysis by supplying "good reasons" for rejecting Dr. Sattar's opinion. 20 C.F.R. § 404.1527(d)(2). Acknowledging Dr. Sattar's status as a treating source, the ALJ found that treating notes by both Drs. Guettler and Sattar indicated Plaintiff exhibited steady and notable improvement after the February, 2006 surgery (Tr. 14). Contrary to Dr. Sattar's medical source statement, the ALJ observed that no restrictions had been placed on Plaintiff's activity until between August, 2006 and May, 2008 (Tr. 15). Finally, the ALJ

reasonably noted that the June, 2008 statement (created one month before the administrative hearing) was unsupported by objective studies or tests (Tr. 15).  Because the treating physician analysis is substantively and procedurally without error, a remand is not warranted.

The ALJ's findings were well within the "zone of choice" accorded to the fact-finder at the administrative hearing level and accordingly, should not be disturbed by this Court. *Mullen v. Bowen*, *supra.*

## CONCLUSION

For the reasons stated above, I recommend Defendant's motion for summary judgment be GRANTED and Plaintiff's motion DENIED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20)

pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

                        s/ R. Steven Whalen
                        R. STEVEN WHALEN
                        UNITED STATES MAGISTRATE JUDGE

Dated:  June 30, 2011

### PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon counsel of Record on this date

Dated: June 30, 2011                s/ Lisa C. Bartlett
                                        Case Manager